IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COREY BRACEY, | : | |
| | : | No. 21-cv-2825-JMY |
| vs. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al. | : : | |

**MEMORANDUM**

**Younge, J.**                                                                                                      **September 28, 2022**

      Currently before the Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by the Defendants. (Motion to Dismiss, MTD, ECF No. 4.) The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth below, the Court will grant in part and deny in part the Defendants' Motion.

**I.  FACTUAL BACKGROUND**:

      Plaintiff, an inmate incarcerated in various Pennsylvania Department of Corrections ("DOC") prisons since 2006, has spent all but five months of the last fifteen years apart from the general population of prisoners, including in the Restrictive Housing Unit and other units collectively referred to as Security Level 5 "SL5" units. (Complaint, ¶¶ 1, 22.) As a result, Plaintiff alleges he was deprived of meaningful social interaction and effective treatment for his mental illnesses, which were caused and exacerbated by the prolonged isolation. (*Id.* ¶¶ 23-39, 65-91.) His mental health diagnoses include major depressive disorder and PTSD. (*Id.*, ¶¶ 141-142, 163.)

      Plaintiff claims that he lives in solitary confinement conditions because the DOC has maintained him on the Restricted Release List, which in turn requires Restrictive Housing Unit

placement. (*Id.*, ¶¶ 95, 97-99, 101, 113, 159.) He was first in a Restrictive Housing Unit at SCI Graterford in 2006, then spent multiple years in solitary confinement at SCI Fayette, SCI Cresson, and other prisons until his return to SCI Graterford in 2015. (*Id.* ¶¶ 101-120.) On February 3, 2020, the DOC transferred him to SCI Phoenix, where he is currently incarcerated. (*Id.* ¶¶ 250, 269.)

Inmates in SL5 housing are given annual psychological examinations "addressing the suitability of continuing confinement in the SL5 Unit." (*Id.* ¶ 126.) Inmates on the Restricted Release List are reviewed annually. (*Id.* ¶¶ 72, 74.) The review includes psychological evaluations and recommendations from the program review committee, which includes the inmate's participation but not a forum to address his continued Restricted Release List placement itself. (*Id.* ¶¶ 74-75, 85, 177, 241.) The DOC does not disclose its specific standards and considerations for Restricted Release List review to inmates. (*Id.* ¶¶ 76-78.)

In July of 2019, Plaintiff appealed his continued placement on the Restricted Release List and was told it was warranted due to his history of assaultive behavior and his unpredictability. (*Id.* ¶¶ 228-29.) Plaintiff grieved this and was provided reasons for his continued Restricted Release List placement and SL5 housing. (*Id.* ¶¶ 237-38.) In March of 2020 (as Covid-related protocols began), Plaintiff grieved his non-receipt of a plan for his release from SL5 housing. (*Id.* ¶¶ 279-281.)

In late December 2020, Defendants Jamie Sorber, Mandy Sipple, Joe Terra, and Charles Hensley (the "SCI Phoenix defendants") supported Plaintiff's removal from the Restricted Release List through a step-down plan and submitted their proposal to Secretary Wetzel and Deputy Executive Secretary Bickell. Later that month, Sorber, Sipple, Terra and Hensley rescinded the proposal. (*Id.* ¶¶ 296-301.) In March 2021, Plaintiff grieved the rescission and

learned that the rescission was because he "ha[d] not yet demonstrated positive adjustment [and had an] assaultive . . . history." (*Id.* ¶¶ 302-303, 311.) In his grievance, Plaintiff stated that his continued placement on the Restricted Release List was detrimental to his mental health. (*Id.* ¶¶ 306-308.)

In April of 2021, Plaintiff was placed into an intensive management unit, as were all Restricted Release List inmates, including inmates not considered to have serious mental illness diagnoses. (*Id.* ¶¶ 250, 269, 321-327.) From April 2021 until June 25, 2021 – when this action was filed – Plaintiff alleges that the only mental health treatment he received was medication; however, he also alleges he had sessions with psychological services specialists. (*Id.* ¶¶ 339, 340, 345.) He also alleges there was a lack of any plan for his release from the Restricted Release and SL5 housing. (*Id.*)

Plaintiff has previously filed lawsuits against the DOC and various correctional officers during his term of confinement in which he had alleged, *inter alia*, constitutional violations under 42 U.S.C. § 1983. *Bracey v. Price*, No. 09-1662, 2012 U.S. Dist. LEXIS 170940 (W.D. Pa. Dec 3, 2012) (summary judgment granted); *Bracey v. Rendell*, No. 11-217, 2014 U.S. Dist. LEXIS 131072 (W.D. Pa. July 15, 2014), adopted *Bracey v. Bread*, No. 11-217, 2014 U.S. Dist. LEXIS 129752 (W.D. Pa. Sept. 17, 2014), aff'd *Bracey v. Sec'y Pa. Dep't of Corr.*, 686 F. App'x 130 (3d Cir. 2017) (summary judgment grant); *Bracey v. Link*, No. 17-cv-2836, 2019 U.S. Dist. LEXIS 8076 (E.D. Pa. Jan 16, 2019) (Settlement Agreement with General Release entered into between the parties); *Bracy v. Valencia*, No. 19-1385, 2021 U.S. Dist. LEXIS 60895 (W.D. Pa. March 30, 2021).

The lawsuit that Plaintiff filed in 2017 is of specific significance to this lawsuit. *Bracey v. Link*, No. 17-cv-2836, 2019 U.S. Dist. LEXIS 8076 (E.D. Pa. Jan 16, 2019). As will be

explained in more detail below, Plaintiff signed a Settlement Agreement which contained a General Release in connection with the 2017 lawsuit. (Settlement Agreement and General Release, MTD Ex. 1, ECF No. 4-1.) For reasons that will be explained in more detail below, Plaintiff's 2011 lawsuit and the final adjudication of that action in *Bracey v. Sec'y Pa. Dep't of Corr.*, 686 F. App'x 130 (3d Cir. 2017), is of significance to issues asserted in this action based on the doctrine of collateral estoppel or issue preclusion.

## II.    STANDARD OF REVIEW:

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id*. at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Iqbal*, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Iqbal*, 556 U.S. at 678). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "[the district court] must tak[e] note of the elements [the] plaintiff must plead to state a claim;" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and

then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend.  The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted.  See, e.g*., Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990).  However, a court need not grant leave to amend when it would be an exercise in futility.  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

**III.    DISCUSSION:**

**A.    Claims Asserted by Plaintiff that Arise from Facts, Omissions, or Conduct that Predate His Execution of the Agreement in *Bracey v. Link*, Civil Action No. 17-2836 (E.D. Pa.), Will Be Dismissed from this Litigation:**

The Agreement reached between the Parties when they settled *Bracey v. Link*, No. 17-cv-2836, 2019 U.S. Dist. LEXIS 8076 (E.D. Pa. Jan 16, 2019), expressly extinguishes Plaintiff's ability to bring a lawsuit for acts, omissions or conduct that occurred prior to him signing the Agreement.  (Settlement Agreement and General Release.)  Therefore, claims asserted by Plaintiff which accrued prior to him signing the Agreement and which arise from operative facts that occurred prior to that point in time will be dismissed from this lawsuit.

When interpreting the terms of settlement agreement, "Courts will enforce a settlement agreement if all its material terms have been agreed upon by the parties," and "[a] settlement agreement will not be set aside absent a clear showing of fraud, duress or mutual mistake." *Pennsbury Village Assoc., LLC v. McIntyre*, 11 A.3d 906, 914 (Pa. 2011). In Pennsylvania, "it is well settled that the effect of a release is to be determined by the ordinary meaning of its language." *Clark Capital Mgmt. Grp v. Navigator Money Mgmt.*, 2012 U.S. Dist. LEXIS 194410, at *8 (E.D. Pa. 2012)). "A settlement will be enforced 'even if the language of the release is general' and no matter "[h]owever improvident the release may be or subsequently prove for either party.'" *Id.* (*quoting Taylor*). Under Pennsylvania law, a release of "unknown claims will be enforced," even where a plaintiff argues he "was unaware of the matter at the time the release was executed." *Winters v. Inv. Sav. Plan for Emps. Of Knight-Ridder, Inc.*, 174 F. Supp. 259, 262 (E.D. Pa. 2001), *aff'd sub nom.*, *Winters v. Kutrip*, 47 Fed. App'x. 143 (3d Cir. 2002).

Plaintiff signed the Agreement on February 26, 2020. (Settlement Agreement and General Release page 7.) When executing the Agreement, Plaintiff agreed to accept financial compensation in exchange for relinquishing claims that pre-dated the Agreement. (*Id.* page 2-3.) The clear, unambiguous language of the General Release contained within the Agreement makes its terms applicable to the Defendants in this action and it applies from the beginning of the world to the date that the agreement was finally executed. The term Defendants is expressly defined in the Agreement to include, "the Commonwealth of Pennsylvania ("Commonwealth") and the Pennsylvania Department of Corrections ("DOC" or "Agency") (collectively with Named Individuals, the "Defendants")." (*Id.* page 1.) The General Release clearly states that it

6

is applicable to "Defendants and their respective predecessors, successors, agents, officers, employees, [etc.]" from two broad categories of claims, as delineated below:

> [All Claims] which were or could have been set forth in the [2017 case], and [claims] which Plaintiff … ever had or now has, for or by reason of any cause, matter, or anything whatsoever arising out of or related to any claims and/or allegations in the Litigation or any other claim Plaintiff may have against Defendants, individually or collectively, including by not limited to all former/terminated defendants to this Litigation, from the beginning of the world to the date of this Agreement.

(*Id.* ¶ 1.)

The Court finds that the Agreement and its General Release are applicable to this lawsuit, and it will dismiss those claims that arise from facts, omissions or conduct that occurred prior to Plaintiff signing the Agreement. "Pennsylvania law is clear that where the Parties manifest an intent to settle all accounts, the release will be given full effect even as to unknown claims." *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 896 (3d Cir. 1975); *see also id.* at n.27 ("Upholding the validity of the release in these circumstances does not offend public policy). "A settlement will be enforced 'even if the language of the release is general' and no matter "[h]owever improvident the release may be or subsequently prove for either party.'" *Clark Capital Mgmt. Grp. V. Navigator Money Mgmt.*, 2012 U.S. Dist. LEXIS 194410, at *8-9 (E.D. Pa. 2012) (First, where the parties' prior release was "broad" and "include[d] all acts or omissions occurring prior to the execution of the release," the court found that subsequent claims "must be dismissed with respect to violations occurring prior to the execution of the release."); *Winters v. Inv. Sav. Plan for Emps. of Knights-Ridder, Inc.*, 174 F. Supp.2d at 262-63 ("although unknown, plaintiff could have made a claim for fraud during the privacy suit."); *Taylor v. Solberg*, 778 A.2d 664, 667-68, 566 Pa. 150, 155 ("If such a release can be nullified or circumvented, then every written release and every written agreement of any kind, no matter how

clear and pertinent, can be set aside whenever one of the parties changes its mind or the injured party receives an inadequate settlement.").

**B.      The Doctrine of Collateral Estoppel or Issue Preclusion Prevents Plaintiff from Asserting Claims Adjudicated in his 2011 Lawsuit (Bracey v. Secy. 686 F. App'x 130 (3d Cir. 2017):**

Plaintiff previously filed a lawsuit against the Pennsylvania Department of Corrections[1] which reached a final adjudication on its merits when the Third Circuit Court of Appeals filed an opinion in *Bracey v. Sec'y Pa Dep't of Correction*, 686 F. App'x 130 (3d Cir. 2017).  The Third Circuit opinion and the final adjudication of issues raised in the prior litigation has preclusive effect on the ability of Plaintiff to raise issues in this litigation.  To the extent that Plaintiff seeks to advance claims in this lawsuit that were previously litigated, or related claims that arise from events that occurred before the prior lawsuit was filed, those claims will be precluded.[2]

Issue preclusion "bars successive litigation of an issue of fact or law … even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  As with claim preclusion, an identity of facts between the two actions is an essential prerequisite for the application of issue preclusion. *Suppan v. Dadonna*, 203 F.3d 228, 233 (E.D. Pa. Feb 4, 2000) (explaining that issue preclusion requires "that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules").  Issue preclusion or collateral estoppel applies where: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to

---

[1] The lead defendant/appellee in the prior lawsuit was the Secretary of the DOC (then Jeffrey Beard), who was sued in his official capacity (Motion to Dismiss, Ex. 3, § III, ¶ 3) as Secretary Wetzel and Executive Deputy Secretary Bickell (among others) are here. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).
[2] Based on the Court's application of the Settlement Agreement and General Release, the Collateral Estoppel effect of Plaintiff's 2011 lawsuit is largely a moot point with the exception of its application to his procedural due process claim.

the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006). Courts in the Third Circuit also consider "whether the party being precluded had a full and fair opportunity to litigate the issue in question in the prior action and whether the issue was determined by a final and valid judgment." *Id.*

In the lawsuit that Plaintiff previously filed in the Western District of Pennsylvania, he challenged the conditions of his confinement and his status on the Restricted Release List, and he brought claims under the Fourth, Eighth and Fourteenth Amendment. Plaintiff argued, among other things, that the manner in which inmates with mental health problems were housed was unconstitutional and that inmates assigned to the Restricted Housing Unit were denied access to mental health treatment. Plaintiff also alleged that he was denied due process under the Fourteenth Amendment when he was assigned to the Restricted Release List and placed in a Restricted Housing Unit. He further challenged the procedures implemented to review his continued placement on the Restricted Release List. In describing the prior lawsuit, the Third Circuit Court wrote, "[t]he manner in which Plaintiff was housed and his RRL designation form the basis of his [second amended] civil rights complaint against the Commonwealth defendants." *Bracey v. Sec'y*, 686 F. App'x 130, 134 (3d Cir. 2017).

Defendants in the prior lawsuit filed motions for summary judgment in January of 2014, and United States Magistrate Judge Maureen P. Kelly issued a report and recommendation in favor of granting defendants' motions. *Bracey v. Rendell*, 2014 U.S. Dist. LEXIS 131072, *52-53 (W.D. Pa. July 15, 2014). United States District Judge Cathy Bisson adopted the report and recommendation filed by Judge Kelly and entered an order that granted summary judgment in favor of the defendants. *Bracey v. Beard*, 2014 U.S. Dist. LEXIS 129752, *3 (W.D. Pa.

9

September 17, 2014). After a substantive review of Plaintiff's claims on appeal, the Third Circuit Court of Appeals affirmed the district court's order that granted summary judgment. *Bracey v. Sec'y Pa. Dep't of Corr.*, 686 F. App'x 130, 137 (3d Cir. 2017).

The Court will preclude Plaintiff from relitigating claims that were actually litigated in the prior lawsuit—claims that were asserted based on facts as pled in the Second Amended Complaint that was filed on April 25, 2013 in previous litigation. (Prior Complaint, Motion to Dismiss Ex 3, ECF No. 4-3.) The Court will also preclude Plaintiff from advancing claims based on facts that occurred prior to his filing of the initial complaint in the prior lawsuit. Plaintiff conducted discovery, and these claims were subject to judicial review in early 2014 when the parties filed their motions for summary judgment.

In the present litigation, for example, Plaintiff alleges Constitutional violations in the conditions of his confinement under the Eighth and Fourteenth Amendment in relationship to his designation on the Restricted Release List which in turn required placement in a Restrictive Housing Unit – at SCI Fayette, SCI Albion, SCI Cresson and SCI Smithfield. (See generally Complaint ¶¶ 100-119, 379-396 (Count I).) To the extent these claims arise from facts that predated his filing of the initial complaint in the previous lawsuit, these claims will be dismissed from this action. The Court applies this logic to Plaintiff's constitutional claims. (*Id.* ¶¶ 379-386 (Count I-III).) The Court also applies this logic to Plaintiff's disability discrimination claims relating to the Restricted Release List placement, treatment, and housing issues—Plaintiff's current claims brought under the Americans with Disabilities Act, 42 U.S.C. § 12132, and Rehabilitation Act, 29 U.S.C. § 794. (*Id.* ¶¶ 387-396 (Count IV and V).) *See Foster v. Twp. of Pennsauken*, Civil Action No. 16-5117, 2017 U.S. Dist. LEXIS 99035, at *14–15 (D.N.J. June 27, 2017) ("While [claim preclusion] extends to claims that 'could have been brought' as well as

10

those actually brought forth in the prior action, the extent of claims that could have been brought includes only those that could have been filed on the date of the initial complaint."); *Morgan v. Covington Twp.*, 648 F.3d 172, *177 (3d Cir. 2011) *("Res judicata* promotes judicial economy and protects defendants from having to defend multiple identical or nearly identical lawsuits by "bar[ring] not only claims that were brought in a previous action, but also claims that could have been brought.").  Plaintiff had a full and fair opportunity to litigate these issues in the prior action and lost.

The procedural due process claim (Complaint ¶¶ 385-386 (Count III)) that Plaintiff makes in relationship to his placement on the Restricted Release List will also be dismissed from this lawsuit.  Plaintiff's procedural due process claim was litigated in the prior lawsuit, and it would appear that there has been no change in the operative facts relied upon by the Third Circuit when dispensing with Plaintiff's claim.  When addressing Plaintiff's procedural due process claim in the prior litigation, the Third Circuit Court wrote, "[Plaintiff's] placement on the [Restricted Release List] . . . is not a housing placement but it presents a similar procedural due process issue."  *Bracey v. Sec'y Pa. Dep't of Corrections*, 686 F. App'x 1309 (E.D. Pa. April 19, 2017).  On the issue of Plaintiff's placement on the Restricted Release List, the Court went on to write:

> In any event, even assuming that Bracey suffered a deprivation of a protected liberty interest by virtue of his extended placement on the RRL, the periodic review offered to Pennsylvania inmates who are indefinitely confined in administrative confinement comports with procedural due process, *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir.2000), and does so with respect to placement on the RRL as well. Department of Corrections policy provides that the status of inmates in the SMU must be reviewed every 90 days. Bracey's placement on the RRL merely added another layer of periodic review, review that he actually received, relating to whether he should be released to the general population. It did not involve a deprivation of liberty as to which any additional procedural due process would attach.

*Bracey v. Sec'y Pa. Dep't of Corrections*, 686 F. App'x 130, 135-136 (E.D. Pa. April 19, 2017).

Plaintiff has not alleged that the procedural safeguards that were in place when he filed the prior lawsuit have been removed or that these procedural safeguards have been disregarded by prison staff.  To the contrary, Plaintiff admits that he has received periodic as well as annual reviews regarding his placement on the Restricted Release List – with those reviews including a psychological evaluation that involved Plaintiff's participation.  (Complaint ¶¶ 114, 121, 177, 214, 241, 293.)  Plaintiff cites to an extensive review of his placement status that took place between February 2020 and January 2021 which included a psychological evaluation and input with a recommendation by the SCI Phoenix Defendants.  (Complaint ¶¶ 275-314.)  Plaintiff even alleges that a plan for his return to the general population was created at that time.  (Complaint ¶¶ 297-300.)  Although the plan for removal from the Restrict Release List was ultimately rescinded, the existence of a plan establishes that Plaintiff's status was reviewed by prison staff.

Further support for dismissal of Plaintiff's due process claim can be found in the July 8, 2021, memorandum that Secretary John Wetzel sent to inmates who were on the Restricted Release List at SCI Phoenix.  (Secretary Wetzel Memo, Motion to Dismiss Ex. 2, ECF No. 4-2.)  The memorandum outlines the "new approach" that will be applied to evaluating inmates continued placement on the Restricted Release List.  (*Id.*)  The "new approach" provides an individualized plan for inmates like Plaintiff (*id.*) which suggests that a process for evaluation is still in place at SCI Phoenix and other Pennsylvania state prisons.

Given the undisputed procedural safeguards provided for Plaintiff in the form of continued review of his status on the Restricted Release List, the Court will apply the doctrine of collateral estoppel to his due process claim.  The Third Circuit decision *Bracey v. Sec'y Pa. Dep't of Corrections*, 686 F. App'x 130 (E.D. Pa. April 19, 2017), relied on the existence of

12

procedural safeguards a continued review when it dispensed with Plaintiff's claim. Therefore, Count III of the Complaint will be dismissed.

### C. Eleventh Amendment Immunity Does Not Bar Plaintiff's Claims for Injunctive and Declaratory Relief:

Defendants Secretary John Wetzel, Executive Deputy Secretary Tabb Bickell, Jamie Sorber, Deputy Superintendents Mandy Sipple, Joe Terra, and Manager Charles Hensley argue that they are entitled to Eleventh Amendment immunity from Plaintiff's claims against them in their official capacities. The Eleventh Amendment precludes private federal litigation against states, state agencies, and state officials in their official capacities. This immunity is subject to three basic exceptions: "(1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment; (2) a state may waive its sovereign immunity by consenting to suit; or (3) under *Ex parte Young*, a state official may be sued in his or her official capacity for prospective injunctive relief." *Hollihan v. Pennsylvania Department of Corrections*, 159 F.Supp.3d 502, 510 (M.D. Pa. 2016) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-70 (1997).

As it pertains to the first exception, it is well-settled that by enacting § 1983 Congress has not abrogated Eleventh Amendment immunity. *Id*. (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989)). Second, Pennsylvania has unequivocally withheld consent to suit under § 1983. *Id*. "Section 8521 of Title 42 of the Pennsylvania Code clearly states, 'Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment of the Constitution of the United States.'" *Id*. (citing 42 Pa. C.S. § 8521(b)); *see also Lombardo v. Pennsylvania, Dept. of Public Welfare*, 540 F.3d 190, 196 (3d Cir. 2008); *see also Laskaris*

*v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981).  Therefore, Plaintiff can only proceed against moving Defendants in their official capacity for injunctive or declaratory relief.

In his response to Defendants' motion to dismiss, Plaintiff explicitly represents that he is not seeking damages against any of the individual Defendants in their official capacities.  "The only relief [he] is seeking against any Defendants in their official capacities is injunctive and declaratory relief."  (Response in Opposition page 40 n.17; ECF No. 6.)  To the extent that Plaintiff seeks injunctive or declaratory relief, the Court will not apply Eleventh Amendment immunity to bar his claims.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) ("official-capacity actions for prospective relief are not treated as actions against the State."); *See Wongus v. Corr.  Emergency Response Team*, 389 F. Supp. 3d 294, 299 (E.D. Pa. 2019) ("The Eleventh Amendment does not bar claims against a state officer in his official capacity for prospective injunctive relief or claims against state officials in their individual capacity for money damages."); *and see Kost v. Dep't of Pub. Welfare of PA*, No. 07-2404, 2009 WL 466166, at *4 (E.D. Pa. Feb. 24, 2009).

The Court will permit Plaintiff to proceed with his request for injunctive or declaratory relief and will not dispense with those claims on motion to dismiss.  However, Plaintiff's claim will be limited based on the Court's application of the General Release to the claims asserted in this action, and the Court's application of doctrine of collateral estoppel arising from the prior lawsuit.  Plaintiff will be permitted to proceed with those injunctive or declaratory claims that survive.

**D.**     **Plaintiff May Proceed with the Remaining Claims Asserted in the Complaint:**

Under 42 U.S.C. § 1983, Plaintiff asserts constitutional claims for violation of the Eighth Amendment – Conditions of Confinement (Complaint ¶¶ 379-381 (Count I)), and Deliberate

Indifference to Serious Medical Needs. (Complaint ¶¶ 382-384 (Count II).) Plaintiff also asserts a disability discrimination claim under the Americans with Disabilities Act, 42 U.S.C. 12132, (Complaint ¶¶ 387-391 (Count IV)) and the Rehabilitation Act, 29 U.S.C. § 794. (Complaint ¶¶ 392-396 (Count V).) Plaintiff may proceed with these claims to the extent that they arise from facts or events that occurred after he signed the Settlement Agreement and General Release—provided that the claims are not barred by collateral estoppel or issue preclusion and were not previously litigated.

### IV.   CONCLUSION:

For these reasons, Defendants' motion to dismiss will be granted in part and denied in part. An appropriate order shall follow. As to those claims dismissed, the Court will not allow amendment of the complaint to replead those causes-of-action because amendment would be futile.

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990). However, a court need not grant leave to amend when it would be an exercise in futility. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the

pleadings before the court demonstrate that further amendment would be futile).

BY THE COURT:

/s/ John Milton Younge  
Judge John Milton Younge
